511 A.2d 1365

INSURANCE COMPANY OF NORTH AMERICA

v.

Judith E. HIPPERT

v.

Tom W. BUTTS t/d/b/a Tom W. Butts Agency, and Allstate Insurance Co., Inc. a Corporation.

Appeal of ALLSTATE INSURANCE CO., INC., a Corporation.

Superior Court of Pennsylvania.

Argued Feb. 19, 1986.

Filed June 16, 1986.

Reargument Denied July 31, 1986.

334

Daniel R. Gigler, Pittsburgh, for appellant.

Theodore F. Huckestein, Jr., Pittsburgh, for Ins. Co., appellee.

Karl W. Wiedt, III, Pittsburgh, for Hippert, appellee.

David M. Neuhart, Pittsburgh, for Butts, appellee.

Before BROSKY, OLSZEWSKI and POPOVICH, JJ.

OLSZEWSKI, Judge:

This appeal comes before us as the result of the order of the Court of Common Pleas of Allegheny County, in which the motion for summary judgment made by appellee, Insurance Company of North America (INA), was granted and the motion for summary judgment made by appellant, Allstate Insurance Co., Inc. (Allstate), was denied. Accordingly, Allstate is to be held responsible for payments made to an accident victim even though it did not insure the victim or the vehicle involved but did insure another vehicle owned by appellee Judith Hippert. In the appeal *sub judice*, we are presented with a new and somewhat unusual factual situation involving the complex rules of the Pennsylvania No-fault Motor Vehicle Insurance Act (hereinafter the Act or No-fault Act).[1] Once again, this Court must interpret

---

1. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S.Secs. 1009.101–701, repealed Act of February 12, 1984, P.L. 26, No. 11, Sec. 8(a), effective October 1, 1984. (Hereinafter, the prefix "1009" will be eliminated when citing to section numbers in the textual material, e.g., section 101, not section 1009.101).

the intricate law in light of the applicable facts, most of which are undisputed. As with many no-fault insurance cases, this is no easy task.

We make note that this appeal is the result of a summary judgment. The law in this area is well settled. "Summary judgment is (proper) when the pleadings, depositions, answer to interrogatories, admissions on file and supporting affidavits considered together reveal no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. This severe disposition should only be granted in cases where the right is clear and free from doubt. To determine the absence of a genuine issue of fact, the court must take the view of the evidence most favorable to the non-moving party and any doubts must be resolved against the entry of judgment." (citations omitted). *Bowman v. Sears, Roebuck & Co.*, 245 Pa.Super. 530, 369 A.2d 754 (1976); *Husak v. Berkel, Inc.*, 234 Pa.Super. 452, 341 A.2d 174 (1975).

The essential facts, to which the parties stipulated, are as follows:

1. Michael P. Hippert is the brother-in-law of defendant, Judith E. Hippert.

2. For a period of three to four months prior to June 17, 1980, Michael P. Hippert resided with Judith E. Hippert, her husband and daughter at 100 Country Club Drive, Oakdale, Pennsylvania.

3. On June 17, 1980 Michael P. Hippert was injured while driving a 1974 Dodge truck owned by Judith E. Hippert.

4. Michael P. Hippert had Judith E. Hippert's express or implied permission to operate her 1974 Dodge truck at the time of the accident on June 17, 1980.

5. At the time of the accident Michael P. Hippert was not the registered owner of a motor vehicle and was not identified by name as an insured in any other contract of insurance complying with the Act.

6. On August 7, 1980 Michael P. Hippert applied to the Pennsylvania Assigned Claims Plan for basic loss

benefits as a result of the injuries sustained by him in the accident on June 17, 1980.

7. Michael P. Hippert's claim under the Pennsylvania Assigned Claims Plan was subsequently assigned to INA.

8. Pursuant to its obligation under Section 108 of the Act, INA paid basic loss benefits to or on behalf of Michael P. Hippert and incurred loss adjustment costs in the amount of $54,141.70.

9. The following payments and expenses incurred by INA were a direct result of Michael P. Hippert's injuries suffered in the motor vehicle accident on June 17, 1980 and are reasonable in amount:

| | |
|---|---:|
| (a) Mercy Hospital in-patient from June 17, 1980 to July 11, 1980 | $30,075.10 |
| (b) Mercy Hospital in-patient from May 28, 1981 to May 30, 1981 | 1,096.05 |
| (c) Three Rivers Orthopedic Associates, Inc. | 3,366.00 |
| (d) Pittsburgh Anesthesia Associates, Ltd. | 1,354.50 |
| (e) Ronald L. Boron, M.D. | 865.00 |
| (f) Stephen A. Lorenz, III, M.D. | 4,155.00 |
| (g) Lanza Pharmacy | 190.00 |
| (h) Work loss from June 17, 1980 to September 18, 1981 at $736.67 per month | 11,250.05 |
| (i) Loss Adjustment Cost | 2,000.00 |

10. The amounts paid by INA on behalf of Michael P. Hippert set forth in No. 9 are "basic loss benefits" as such are defined in the Act.

11. On June 17, 1980 Allstate had in force and effect a policy of insurance for a 1977 Oldsmobile owned by Judith E. Hippert.

The specific subject of the instant appeal is an exclusion clause in the Allstate insurance policy, which reads:

This coverage DOES NOT APPLY TO BODILY INJURY TO:

(a) the NAMED INSURED or any RELATIVE resulting from the maintenance or use of the NAMED IN-

SURED'S MOTOR VEHICLE which is NOT an IN-SURED MOTOR VEHICLE. (Emphasis in original). There are no Pennsylvania Supreme or Superior Court decisions determining the validity of this exclusionary clause. Several courts of common pleas have, however, dealt with this issue. Unfortunately, the various decisions are not in agreement and the reported cases conflict in their holdings. It is against this procedural backdrop that we must resolve the issue.

Appellant Allstate argues that the exclusionary clause relieves it of any liability for Michael Hippert's accident since the 1974 Dodge truck involved was not the motor vehicle insured by the policy. Appellant also contends that the exclusion is valid and cites the clause's approval by the Insurance Commissioner as support. INA, appellee, argues that the exclusion is contrary to the No-fault Insurance Act despite its approval and is therefore invalid. The lower court agreed; we do not.

■ We will immediately dispose of appellant's reliance on the Insurance Commissioner's approval of the exclusionary clause. This does not per se establish the validity of this provision despite the requirement that the forms must be approved before they can be used. *See* Insurance Company Law of 1921, as amended, 40 P.S.Sec. 477b. A court can determine that a challenged clause is void as being contrary to law, which then invalidates the approval as well. *Brader v. Nationwide Mutual Insurance Company*, 270 Pa.Super. 258, 411 A.2d 516 (1979); *Wilbert v. Harleysville Mutual Insurance Co.*, 254 Pa.Super. 217, 385 A.2d 987 (1978). As such, the Commissioner's approval cannot enter into our considerations.

■ In dealing with any statute, we must be mindful of its purpose.[2] When the No-fault Act was enacted, the General Assembly declared as its purpose:

2. The Statutory Construction Act of 1972, 1 Pa.C.S.A.Sec. 1921(a) states:
   (a) the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly.

**Purposes**—Therefore, it is hereby declared to be the policy of the General Assembly to establish at reasonable cost to the purchaser of insurance, a statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims. 40 P.S.Sec. 1009.102(b).  Additionally, we must liberally construe the No-fault Act in order to assure that its purpose is given effect. *Sheppard v. Old Republic Life Ins. Co.,* 21 Pa.Cmwlth. 360, 346 A.2d 383 (1975).  In so doing, this Court is obliged to take care so that any interpretation does not yield "a result that is absurd, impossible of execution or unreasonable." [3]

After disposing of the preliminary background applicable to the instant case, we turn now to the validity of the exclusion clause in the policy.

We first address the possible effects of ruling the exclusionary clause invalid.  If that is done, it is quite obvious that Judith Hippert, as owner of both the uninsured vehicle involved in the accident and the second vehicle insured by Allstate reaps the benefits.  Such a holding would allow her to pay premiums on insurance for one vehicle while actually receiving coverage on two vehicles.[4]  Therefore, she is being rewarded by violating the express mandate of the Act [5] since she escapes economic liability for the accident involving an uninsured vehicle.[6]

> Every statute shall be construed, if possible, to give effect to all its provisions.

**3.**  1 Pa.C.S.A.Sec. 1922(1).

**4.**  The potential for abuse is staggering.  Should this result, there is nothing that would prohibit a family with three, four or more vehicles from insuring one at the most favorable rate and then extend coverage by virtue of this Court's ruling.  We cannot imagine that the legislature intended the No-fault Act impose such a heavy burden on the insurance companies.

**5.**  Section 104(a) in pertinent part provides:

> Every owner of a motor vehicle which is registered or which is operated in this Commonwealth by the owner or with his permission, shall continuously provide security covering such motor vehicle while such vehicle is either present or registered in the Commonwealth.  Security shall be provided for the payment of basic loss benefits ...

**6.**  Section 301(a)(1) of the Act, in pertinent part, clearly provides for the burden to fall on Judith:

Furthermore, the Act provides definite penalties for the owner of an uninsured vehicle involved in an accident. The sanctions are both civil[7] and criminal.[8] Even the most liberal statutory interpretation could not allow us to hold the exclusionary clause invalid without weakening the impact of the Act's purpose. Adhering to the unambiguous language of the statute, INA should be reimbursed by Judith Hippert, not Allstate. Any other result, such as forcing Allstate to reimburse INA and then seeking reimbursement from Judith Hippert, is absurd and circuitous. The excess litigation caused by following this route is unnecessary.

> An owner of a motor vehicle involved in an accident remains liable if, at the time of the accident, the vehicle was not a secured vehicle. Any action taken by this Court cannot conflict with this provision.

7. Section 501 provides:
> The obligor obligated to pay basic loss benefits for accidental bodily injury to a person occupying a motor vehicle, the owner of which is uninsured pursuant to this Act or to the spouse or relative resident in the household of the owner or registrant of such motor vehicle, shall be entitled to recover all the benefits paid and appropriate loss or adjustments costs incurred from the owner or registrant of such motor vehicle or from his estate. The failure of the person to make payment within thirty days shall be grounds for suspension or revocation of his motor vehicle registration and operator's license.

8. Section 601. OPERATION OF A VEHICLE WITHOUT SECURITY.
> Any owner of a passenger vehicle, for which the existence of security for basic loss benefits and tort liability insurance is a requirement for its legal operation upon the public highways of this State, under either section 104 or 110 of this act or sections 418, 419 or 420, Act of April 29, 1959 (P.L. 58, No. 32), known as The Vehicle Code, who operates such motor vehicle or permits it to be operated upon a public highway in this State without having in full force and effect security complying with the terms of section 104 is guilty of a misdemeanor. And any other person who operates such a motor vehicle upon a public highway in this Commonwealth with the knowledge that the owner does not have such security in full force and effect is guilty of a misdemeanor. And each person convicted of a misdemeanor under the terms of this section may be fined not less than one hundred dollars ($100) or more than five hundred dollars ($500) or may be imprisoned for not more than six months or both.

■ It stands to reason, then, that the most prudent course of action is to effectuate a direct method of satisfying the provisions of the No-fault Act. Leaving the exclusionary clause intact places the risk on the intended party and does not contravene the Act. The major elements of the Act are: (1) a requirement that each vehicle be insured if it is to be registered and operated in the Commonwealth; [9] and (2) a scheme for determining the victim's source of no-fault benefits [10] and to compensate the victim, rehabilitate him, and get him back into a productive life without regard to fault.[11] We fail to see how these provisions are violated by upholding the exclusionary clause. Indeed, it is easier to see that by upholding the clause we are also upholding the intent of the Act.

■ The effect of validating the Allstate proviso relieves it of the burden of reimbursing INA placed upon them as a consequence of the summary judgment granted by the lower court. This in turn places the burden on the intended party, Judith Hippert, as owner of the uninsured vehicle. The ensuing result is in keeping with the spirit of the Act: Judith Hippert is penalized and not rewarded for failing to comply with the Act; the applicable source acquires the costs of the accident; and the victim is justly compensated without delay. Furthermore, this Court need not strain to reach this conclusion nor is the conclusion the outcome of an absurd or unreasonable interpretation.

■ Because the appellees and the lower court placed much emphasis on the argument that Michael Hippert satisfied the definition of "insured," we are constrained to address that issue.

The Act defines "insured" as:

(A) an individual identified by name as an insured in a contract of basic loss insurance complying with this act; and

9. *See* 40 Pa.C.S.A. Sec. 1009.104, 110.

10. *See* 40 Pa.C.S.A. Sec. 1009.204.

11. *See* 40 Pa.C.S.A. Sec. 1009.102.

(B) a spouse or other relative of a named insured ... if—

(i) not identified by name as an insured in any other contract of basic restoration insurance complying with this act; and

(ii) in a residence in the same household with a named insured.[12]

As such, there can be no doubt that Michael Hippert qualifies under subsection (B).[13] It does not necessarily follow, however, that Michael is automatically covered by Allstate in any and all accidents in which he may become involved. To allow such a broad definition would make absolute the belief that "the security follows the person, not the vehicle."[14] We know, however, that this rule is *not* absolute. There are at least two exceptions, one statutory and one judicial, needed to follow the intent of the statute.[15] While the situation at present does not fall into either exception, and it is not our objective to create a new exception, given the nature of the circumstances before us, we are obligated to rule that in this instance the security does not follow the person. To hold otherwise would be contrary to the Act.

In conclusion, Judith Hippert paid premiums on a 1977 Oldsmobile through Allstate. There is no doubt that Michael is an insured with respect to that vehicle. We decline,

12. Section 501, *supra* note 6.

13. Michael was Judith's brother-in-law and had lived in her household for several months prior to the accident. Since he did not own a vehicle he was not required to carry any insurance. Hence, he was not identified by name in any insurance contract.

14. Schrager: The Pennsylvania No-fault Motor Vehicle Insurance Act Sec. 1:15.3 (1979), as cited in *Occidental Fire and Casualty Insurance Company v. Nationwide Insurance Company*, 24 Pa.D & C3d 276, 278 (1982), states:

The No-fault Act generally provides that when a person is named in an insurance policy, he and his relatives are covered by that policy regardless of the vehicle they are using at the time of the accident. The Act envisions that "the security follows the person, not the vehicle."

15. The statutory exception is found in Section 204(a)(1), pertaining to the situations in which the victim is in his employer's vehicle. The judicially created exception encompasses the cases when a victim is driving his uninsured vehicle. It was first expounded in *Walburn v. Nationwide Mutual Insurance Company*, 98 Dauphin 166 (1976).

however, to allow those premiums to be extended to any vehicle driven by Michael. As noted previously, this is an unreasonable expectation. Therefore, we reverse the summary judgment granted INA against Allstate and denied Allstate against INA. This decision does not affect the rights of INA against Judith Hippert as owner of the uninsured vehicle.

Order vacated. Judgment reversed. Jurisdiction is relinquished.

BROSKY, J., files dissenting opinion.

BROSKY, Judge, dissenting:

Michael Hippert, while residing in the home of a relative, Judith Hippert, was driving Mrs. Hippert's uninsured Dodge pickup truck when it was involved in an accident. Pursuant to the assigned claims plan, No-fault § 108, INA paid basic loss benefits to or on behalf of Michael Hippert. INA brought suit against Mrs. Hippert under § 501 of the Act, which provides that an insurance company shall be entitled to recover from the owner of an uninsured motor vehicle when the company has been obligated to pay basic loss benefits to a relative of the owner of the uninsured motor vehicle when the relative, while residing with the owner, is injured while occupying the owner's uninsured motor vehicle. Mrs. Hippert joined Allstate as an additional defendant, along with the owner's insurance agent, under the theory that lack of coverage was due to the agent's failure to notify Allstate of the owner's desire to add the uninsured motor vehicle to the owner's existing policy, which covered the owner's other automobile (a 1977 Oldsmobile). Realizing that under § 204(a)(2) of the Act another insurance company, Allstate, was the security liable for the payment of basic loss benefits to Michael Hippert, INA filed a motion for summary judgment against Allstate for reimbursement of the basic loss benefits paid, which motion was granted by the trial court. (Allstate filed its own motion for summary judgment, which was denied). Allstate appealed judgment for INA, arguing that an exclusion clause

in its policy covering the Oldsmobile precluded recovery of basic loss benefits from Allstate by Michael Hippert (or, to be more precise, precluded reimbursement of INA by Allstate for benefits previously paid by INA to Michael Hippert).

It is clear, as the majority notes, that the exclusionary clause in question cannot prevail if contrary to the No-fault Act. It also appears clear, as the majority concedes, that Michael Hippert, the injured party to whom basic loss benefits were paid, comes within the definition of "insured" contained in § 103 of the No-fault Act, since Mr. Hippert is a relative residing in the same household as an individual, Judith Hippert, who is named as an insured in a contract of basic loss insurance (the Allstate policy covering Mrs. Hippert's 1977 Oldsmobile). Since § 204(a)(2) of the Act provides that "[t]he security for the payment of basic loss benefits applicable to an injury to ... an insured is the security under which the victim ... is insured ...," the security applicable to this accident is therefore clearly the Allstate policy covering the Oldsmobile, notwithstanding the exclusionary clause of the policy. What is not clear is how the majority is able to find that INA, the company that paid basic loss benefits under the assigned claims plan to Michael Hippert, should find itself obligated to pay benefits, rather than Allstate, the insurer of the 1977 Oldsmobile. Under § 204(a)(5) of the Act, the assigned claims plan only comes into play when there is no other security applicable to the accident.

The majority concludes that setting aside the exclusionary clause in the Allstate policy could result in Judith Hippert escaping economic liability for the accident and being "rewarded" for violating the requirement that all motor vehicles be insured. In connection with this discussion, the majority cites § 301(a)(1) of the Act which abolishes tort liability, with certain enumerated exceptions including for owners of unsecured vehicles involved in accidents. Since Judith Hippert did not provide security for the Dodge pickup in accordance with § 104 of the Act, the vehicle is

not a "secured vehicle" and § 301(a)(1) would not relieve Mrs. Hippert of tort liability should she be involved in an accident while driving her Dodge pickup. The concern of the majority that a result different from the majority's would have untoward effects in a future case involving tort liability is therefore totally unwarranted. As for the majority's concern that Mrs. Hippert will be "rewarded" for failing to insure her vehicle, it should be noted that § 501 of the Act provides for suspension or revocation of both the motor vehicle registration and the operator's license for failure of the owner of an uninsured motor vehicle to reimburse the appropriate obligor.

The majority states that giving effect to the exclusionary clause of the Allstate policy would result in placing the risk on the intended party, the party that neglected to insure a vehicle, in this case, Mrs. Hippert. The majority's desire to place the ultimate burden on the party failing to insure a vehicle is entirely in keeping with the Act, but this result is achieved regardless of whether INA or Allstate is obligated to initially bear the expense of Michael Hippert's basic loss benefits. *Either* insurance company may attempt to recover this expense from Judith Hippert under § 501 of the Act. The obvious intent of this section is to permit any obligor paying basic loss benefits to recover its expenses from the party who violates the Act by failing to insure his motor vehicle. The majority recognizes this, but finds that it would be "absurd and circuitous" to force Allstate to reimburse INA and then seek reimbursement from Mrs. Hippert. Certainly INA will not find such a result to be absurd and circuitous if it is forced to try a prolonged case against Mrs. Hippert and prevails, only to find that Mrs. Hippert is judgment-proof.

The intent of § 204 of the Act is to set forth which of various insurers potentially at risk in a particular situation will be obligated initially to pay basic loss benefits to parties injured in motor vehicle accidents. According to the scheme set forth in § 204, under the facts of the case before us, Allstate, as opposed to INA, should be obligated

to provide the basic loss benefits, then bear the burden of attempting to recover from the owner of the uninsured vehicle. The trial court acted properly in granting summary judgment against Allstate in favor of INA. The judgment should be affirmed, and the case should be returned to the trial court to permit a determination of: (1) whether Allstate will be permitted to recover from Judith Hippert the basic loss benefits initially paid by INA and reimbursed to INA by Allstate (assuming that this claim has been properly raised by Allstate), or (2) whether Judith Hippert will prevail on the theory that Allstate's agent failed to list the Dodge pickup on the existing policy. Although the majority believes that this result will cause excess litigation, I fail to see how this result will cause any more litigation than the majority's reversal, which will return the case for further action by INA against Judith Hippert, who will in turn pursue her claim against Allstate under the agency theory.

I respectfully dissent.